IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LOUIS ROY CHAPMAN,**

    Plaintiff,

v.                                                                 Civil Action No. **3:14CV463**

**CORRECTIONAL OFFICER BULLOCK,** *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Louis Ray Chapman, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on, *inter alia*, several Motions to Dismiss and the Court's authority to review complaints by individuals proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2).[2] For the reasons that follow, the Court will GRANT the Motions to Dismiss and DISMISS Chapman's claims as barred by the relevant statute of limitations.

**I. Standard for Motion to Dismiss for Failure to State a Claim**

When an individual is proceeding *in forma* pauperis, this Court must dismiss the action if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court will GRANT Chapman's Motion for an Extension of Time to File a Response (ECF No. 56) and will DEEM Chapman's Responses (ECF Nos. 65–66) timely filed.

may be granted." 28 U.S.C. § 1915(e)(2). The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates,* 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin,* 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the

speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Summary of Allegations

On October 14, 2011, Chapman was transferred to the Powhatan Correctional Center ("Powhatan"). Upon arriving at Powhatan, Chapman wrote letters to various state and federal officials complaining about the conditions at Powhatan. According to Chapman, his letter writing campaign angered the staff at Powhatan.

### A. The Threats

On "December 30, 2011, [Correctional Officer] Bullock put her fingers to her throat moving them from side-to-side in a cutting motion. This 'death threat' was directed at

3

Chapman. . . . Bullock was fraternizing with inmate Dave Young. Young pointed to Chapman telling Bullock, 'He will be getting what he deserves soon.'" (Compl. 6.)[3]

On January 11, 2012, inmates Mike Stewart and Dave Young met with Captain Newcomer. After that meeting, Stewart returned to the dorm and said "he was going to make Chapman squeal like a pig . . . ." (*Id.* at 9.) When Young returned to the dorm, he told Chapman that Captain Newcomer had given Young the "'greenlight,'" *i.e.*, the okay to kill Chapman. (*Id.*) Thereafter, Stewart and Young threatened and verbally abused Chapman. Other inmates told Chapman that Stewart and Young "were planning something against him." (*Id.*)

In January of 2012, while correctional officers shopped on the internet, "Correctional Officer (CO) Bullock, inmates Mike Stewart and Dave Young, drug and tobacco dealers, were making death threats against Chapman. Stewart and Young threatened Chapman with death, rape, bodily harm, stalked and assaulted[4] him." (*Id.* at 4.) On January 17, 2012, Chapman met with Sergeant Bendrick and explained that inmate Stewart and Young were threatening him. Sergeant "Bendrick did nothing." (*Id.*) On January 26, 2012, Chapman had a meeting with Assistant Warden Aldrige and Sergeant Bendrick concerning the threats by Correctional Officer Bullock, Stewart and Young. (*Id.* at 5.)

---

[3] The Court corrects the capitalization and punctuation in the quotations from Chapman's submissions. Additionally, the Court omits the emphasis in the quotations from Chapman's submissions.

[4] While Chapman repeatedly states that he was assaulted, he provides no facts indicating that he was subjected to any significant physical force. At best, Chapman states that on a single occasion, Young spit on Chapman and "physically pushed" Chapman. (Compl. 9.)

4

## B. The Charge of Possession of Tobacco

On January 21, 2012, Chapman found two pieces of paper in latex glove fingers on the floor of his bed space. Chapman believed these items to be "threatening notes from Stewart and Young," so he mailed them to the Governor and asked for an investigation. (*Id.* at 4.)

On January 29, 2012, Chapman sent multiple letters to state and federal officials concerning the threats against his person.

On "January 31, 2012, the two (2) pieces of paper were returned from the Governor's office. Bendrick had Chapman initial them as the two (2) pieces of paper he found on the floor. They were still folded the way he sent them to the Governor." (*Id.* at 5.) Based on the contents of the paper, "Bendrick admitted [that] he, Jeffrey Dillman, Warden, Eric Aldrige, [Assistant Warden] and Capt[ain] Newcomer agreed between themselves to charge Chapman with Possession of Tobacco." (*Id.*) "Chapman never saw any tobacco and offered several times to take a polygraph, but was refused." (*Id.*)

> According to Chapman,
>
> Newcomer, to cover for Stewart and Young . . . and because Chapman wrote state and federal officials about the poor living conditions at Powhatan, with Dillman, Aldrige and Bendrick, agreed to approve the overt act of Bendrick writing a false charge against Chapman for Possession of Tobacco. Newcomer ordered Chapman's false imprisonment in punitive segregation an atypical environment where Chapman spent seventy-five (75) days.

(*Id.* at 10.)

On June 10, 2013, after Chapman filed various appeals and grievances, the charge of possession of tobacco was expunged from Chapman's institutional record. (*Id.*)

"Bendrick, Dillman, Aldridge, and Newcomer lied and manufactured the charge in retaliation and to harass [Chapman] for exercising [his] First Amendment right to petition the

government for redress, exposing drugs, living conditions, and [their] failure to protect [him]." (Chapman Aff. 3, ECF No. 1–2.)

### C. The Charge of Disobeying a Direct Order

On February 23, 2012, Sergeant White told Correctional Officer Simmons to remove Chapman from punitive segregation and order him to go back to general population. Chapman refused to go back to general population because of the prior threats against his person. Correctional Officer Simmons charged Chapman with Disobeying an Order. (Compl. 23.)

On March 5, 2012, Chapman was found guilty of the charge of Disobeying a Direct Order. Chapman was sentenced to eleven (11) days in isolation. As a further result of Chapman's receiving these two institutional charges, his "security level [was] raised from 3 to 4 [and] he was transferred to Nottoway Correctional Center, a higher level security prison [and] placed in a Gang Pod, earning no good time." (Compl. 21.)[5] At the time he filed the action, Chapman was incarcerated in the Lawrenceville Correctional Center. (ECF No. 1–7, at 1.)

### D. Chapman's Pursuit of Administrative Remedies

Chapman challenged the charge of Possession of Tobacco by filing "appeals, grievances and letters." (Compl. 14.) On June 10, 2013, Gary Bass, the Regional Administrator expunged that charge from Chapman's record. (*Id.*)

Chapman appealed the charge of disobeying a direct order. On "August 19, 2013, Chapman received a letter" denying his final level of appeal. (*Id.* at 6.)

### E. The Filing of the Complaint

On June 16, 2014, the Court received Chapman's Complaint. (*Id.* at 1.) Chapman's Complaint was accompanied by a cover letter (ECF No. 1–6) and a request to proceed *in forma*

---

[5] Chapman indicates that he was transferred to Nottoway in March of 2012. (ECF No. 66, at 4.)

6

*pauperis* (ECF No. 2) that suggest Chapman signed his Complaint and handed it to prison officials for mailing to this Court on May 26, 2014. Accordingly, for purposes of the present statute of limitations analysis, the Court deems the Complaint filed as of May 26, 2014. *See Lewis v. Richmond Cty. Police Dep't*, 947 F.2d 733, 736 (4th Cir. 1991) (concluding inmate's civil action was filed for statute of limitation purposes when handed to prison officials for mailing).

### III. Chapman's Claims and Demands for Relief

Chapman raises the following grounds for relief:

| | |
|---|---|
| Claim 1 | Correctional Officer Bullock violated Chapman's rights under the Eighth Amendment and Fourteenth Amendment when she encouraged inmates Young and Stewart to threaten Chapman. |
| Claim 2 | Captain Newcomer violated Chapman's Eighth Amendment and Fourteenth Amendment rights by: (a) encouraging inmates Young and Stewart to threaten Chapman; and (b) approving the false charge of Possession of Tobacco, which resulted in Chapman spending seventy-five (75) days in segregation. |
| Claim 3 | Sergeant John Bendrick violated Chapman's Eighth Amendment and Fourteenth Amendment rights by filing the false charge of Possession of Tobacco against Chapman, which resulted in Chapman spending seventy-five (75) days in segregation. |
| Claim 4 | Assistant Warden Aldrige violated Chapman's Eighth Amendment and Fourteenth Amendment rights by: (a) his indifference to the threat made against Chapman; and (b) approving the false charge of Possession of Tobacco against Chapman. |
| Claim 5 | Warden Dillman violated Chapman's Eighth Amendment and Fourteenth Amendment rights by: (a) his indifference to the threat made against Chapman; and (b) approving the false charge of Possession of Tobacco against Chapman. |
| Claim 6 | Sergeant White violated Chapman's Eighth Amendment and Fourteenth Amendment rights by signing off on the false charge of Possession of Tobacco without conducting an investigation. |
| Claim 7 | Unit Manager Edwards violated Chapman's First Amendment, Eighth Amendment, and Fourteenth Amendment rights by threatening to charge |

7

|  |  |
|---|---|
|  | Chapman with Disobeying a Direct Order if Chapman refused to return to general population. |
| Claim 8 | Counselor Graham violated Chapman's First Amendment, Eighth Amendment, and Fourteenth Amendment rights by approving Edwards's decision to charge Chapman with Disobeying a Direct Order when Chapman refused to return to general population. |
| Claim 9 | Correctional Officer Simmons violated Chapman's Eighth Amendment and Fourteenth Amendment rights by charging Chapman with Disobeying a Direct Order when he refused to return to general population. |
| Claim 10 | Sergeant White violated Chapman's Eighth Amendment and Fourteenth Amendment rights by directing Correctional Officer Simmons to charge Chapman with Disobeying a Direct Order when he refused to return to general population. |
| Claim 11 | Hearings Officer Leabough violated Chapman's Eighth Amendment and Fourteenth Amendment rights by finding Chapman guilty of the charges of Possession of Tobacco and Disobeying a Direct Order when Chapman refused to return to general population. |
| Claim 12 | Captain Russell violated Chapman's Eighth Amendment and Fourteenth Amendment rights by: (a) failing to take action regarding the threats against Chapman; and (b) approving Chapman's transfer to a higher security institution. |
| Claim 13 | Correctional Officers Wilson, Spence, Gosselin, Godzwa, Brooks, Branch, Harris, and Baldwin violated Chapman's rights under the Eighth Amendment and the Fourteenth Amendment when they utilized the internet during working hours and failing to protect Chapman from harm. |

Additionally, although not formally listed as a ground for relief, Chapman asserts Defendant Bendrick and some of the other Defendants took hostile action against Chapman "to 'chill' Chapman's First Amendment right to petition the government for redress." (Compl. 13.)

Chapman demands monetary damages and injunctive relief. Specifically, Chapman demands: a "single cell of Plaintiff's choice in population; [a] law library position in any prison he [is] in;" and expunging the charge of Disobeying a Direct Order from his record. (*Id.* at 31.)

8

## IV. Analysis

### A. Chapman's Claims Are Barred by the Statute of Limitations

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss claims which the relevant statute of limitations clearly bars. *Brown v. Harris*, No. 3:10CV613, 2012 WL 12383, at *1 (E.D. Va. Jan. 3, 2012) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655–57 (4th Cir. 2006); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)). Because no explicit statute of limitations for 42 U.S.C. § 1983 actions exists, the courts borrow the personal injury statute of limitations from the relevant state. *Nasim*, 64 F.3d at 955 (citing *Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01-243(A) (West 2015). Hence, Chapman should have filed his Complaint within two years from when the underlying claims accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting *Nasim*, 64 F.3d at 955). Here, the record reflects that all of Chapman's claims accrued more than two years prior to the filing of the Complaint on May 26, 2014.[6] Accordingly, the statute of limitations bars Chapman's claims and the action unless Chapman can demonstrate some viable basis for tolling the statute of limitations.

---

[6] Chapman contends that his claims did not accrue until June 10, 2013, when the charge of Possession of Tobacco was expunged. (Chapman's 2d Resp. 13, ECF No. 82.) Chapman offers no sensible argument as to how expunging this charge delayed the accrual of his pertinent causes of action. It is plain that Chapman's causes of action all accrued prior to the end of March 2012, when he was threatened, charged, transferred, *et cetera*.

## B. Chapman's Arguments for Tolling

When, as here, a federal court borrows a state statute of limitations, it also borrows the state's statutory and equitable tolling rules. *See Scoggins v. Douglas*, 760 F.2d 535, 537–38 (4th Cir. 1985). As explained below, no doctrine of statutory or equitable tolling saves Chapman's stale claims.

Initially, Chapman asserts that section 8.01–229(A)(3) of the Virginia Code,[7] which tolls the time an inmate has for filing an action against his committee, absolves him from filing any action "until released" from incarceration. (Chapman's Resp. 6, ECF No. 66.) Both this Court and the United States Court of Appeals for the Fourth Circuit have rejected the notion that the foregoing statutory provision tolls the limitation period for inmates such as Chapman who seek to bring suit against their jailors. *See Liverman v. Johnson*, No. 3:07CV344, 2008 WL 2397544, at *4 (E.D. Va. June 12, 2008) (citing *Gilreath v. Manager of Va. Corr. Enters.*, No. 91–2667, 1992 WL 296365, at *1 (4th Cir. Oct. 16, 1992)).

Next, Chapman contends that the limitation period was tolled until sometime in the summer of 2013 when he finally completed exhausting all of his available administrative remedies for all of his claims. (Chapman's Resp. 6–9, ECF No. 66.) Under the relevant Virginia law, the limitation period is not tolled simply because an inmate is exhausting his administrative remedies for his civil rights claims. *See Grethen v. Clarke*, No. 2:13CV416, 2015 WL 3452020, at *3 (E.D. Va. Mar. 13, 2015) (Smith, C.J.); *Roseboro v. Brown*, No. 1:13CV513 LO/TRJ, 2015 WL 631352, at *3–4 (E.D. Va. Feb. 12, 2015) (O'Grady, J.) ("[I]t is clear that, under Virginia law, plaintiff is not entitled to automatic equitable tolling of the statute of limitations while he exhausted his remedies under the [Prison Litigation Reform Act]."); *see also Wagner v. Barnette*,

---

[7] "If a convict is or becomes entitled to bring an action against his committee, the time during which he is incarcerated shall not be counted as any part of the period within which the action must be brought." Va. Code Ann. § 8.01–229(A)(3) (West 2015).

No. 7:12–CV–00441, 2014 WL 695388, at *4 n.13 (W.D. Va. Feb. 24, 2014) (distinguishing "*Johnson v. Rivera*, 272 F.3d 519 (7th Cir. 2001), [which] interpreted an Illinois statute as requiring the court to toll the applicable Illinois statute of limitations while the incarcerated plaintiff pursued administrative remedies with state prison officials before filing an action pursuant to 42 U.S.C. § 1983").

Chapman persists that under Virginia's doctrine of equitable estoppel, Defendants are precluded from raising a statute of limitations defense. (Chapman's Resp. 8, ECF No. 66.) The pertinent law requires that:

> a party seeking to invoke the doctrine of estoppel must [allege] the following elements: (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the fact; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

*Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 266 S.E.2d 887, 890 (Va. 1980). Chapman has not presented any factual allegations to support the foregoing elements. *See Jones v. Shooshan*, 855 F. Supp. 2d 594, 605 (E.D. Va. 2012) (citation omitted) ("At the motion to dismiss stage, the plaintiff has the burden of pleading facts that would support a finding of equitable estoppel."). Accordingly, Defendants are not equitably estopped from raising a statute of limitations defense.

An inmate may be entitled to equitable tolling where some extraordinary delay in processing his administrative remedies actually prevented him from filing within the limitation period. That, however, is not the case here. Only "rarely will circumstances warrant equitable tolling." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). The Supreme Court has "made clear that a [plaintiff] is 'entitled to

11

equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and [(3)] prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). With respect to the third element, a plaintiff must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (citations omitted).

Chapman fails to provide a coherent explanation as to why he could not file *any* of his claims for relief in his current Complaint until the charge of Possession of Tobacco had been expunged.[8] For example, Chapman's first and thirteenth claims, regarding the threats to Chapman's person, had little to no relation to any claims pertaining to the charge of Possession of Tobacco and could have been pursued immediately upon exhausting the administrative remedies relevant to Claims 1 and 13. Thus, it appears that Chapman's decision to lump a host claims into a single complaint, rather than any extraordinary circumstance, occasioned much of the delay in filing the action. More critical for the current analysis, Chapman fails to allege facts that suggest that, despite any alleged delay in the ability to utilize the grievance process, "acting with reasonable diligence" he could not have filed on time, *i.e.*, before April of 2014. *Id.* at 134. Chapman's submissions indicate he completed any plausibly relevant administrative remedies in 2013, months prior to the expiration of the limitation period. Accordingly, the record indicates that Chapman's lack of diligence, rather than any extraordinary circumstances, prevented the timely filing of the action.

---

[8] Chapman merely states that he "could not file a grievance concerning the manufactured tobacco charge written by defendant John Bendrick, until the charge was 'expunged' by Gary Bass, Regional Administrator [on] June 10, 2013." (Chapman Resp. 9.)

## V. Conclusion

The Court will GRANT Chapman's Motion for an Extension of Time to File a Response (ECF No. 56) and will DEEM Chapman's Responses (ECF Nos. 65–66) timely filed.

Chapman's claims are DISMISSED WITH PREJUDICE. The Motions to Dismiss for Failure to State a Claim (ECF Nos. 21, 49, 78) will be GRANTED.

Defendant Branch's Motion for Extension of Time to File a Response to the Complaint (ECF No. 62) will be DENIED AS MOOT. Chapman's Motion to Dismiss Claims Against Defendant Brook (ECF No. 54) will be DENIED AS MOOT. Chapman's various motions pertaining to serving the remaining unserved defendants (ECF Nos. 70–71, 75) will be DENIED AS MOOT. The Clerk will be DIRECTED to note the disposition of the action pursuant to 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

/s/
John A. Gibney, Jr.
United States District Judge

Date: 2/9/16
Richmond, Virginia